IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 17-00743 SOM |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANT'S |
| | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE |
| vs. | ) | |
| | ) | |
| PATRICK WINCHESTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**I.       INTRODUCTION.**

Defendant Patrick Winchester has filed a compassionate release motion, arguing that the First Step Act made him eligible for the safety valve and therefore not subject to the 10-year mandatory minimum term of imprisonment to which he was sentenced. Winchester says that, in light of a recent Ninth Circuit case that clearly establishes his safety valve eligibility, his sentence should be shortened to 78 months. This court agrees that his sentence should be reduced, but not to 78 months. The court reduces his sentence to 82 months, taking into account, among other things, his convictions for crimes involving violence and threats of violence.

II.        BACKGROUND.

On September 20, 2018, Winchester entered a plea of guilty to Count 2 of the Indictment in this case, which charged him with having knowingly and intentionally distributed 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers. *See* ECF No. 27. Winchester's plea agreement stipulated to and this court determined that he was responsible for 150.8 grams of "ice" and that he had 3 criminal history points. *See* Memorandum of Plea Agreement, ECF No. 30, PageID # 58; Presentence Investigation Report, ECF No. 35, PageID #s 101 and 106; Minutes of Sentencing, ECF No. 38, PageID # 146 (adopting the Presentence Investigation Report). Pursuant to the Drug Quantity Table in § 2D1.1 of the 2018 United States Sentencing Commission Guidelines Manual, Winchester's Base Offense Level was 32. He received a two-level reduction for acceptance of responsibility (USSG § 3E1.1(a)) and a one-level reduction for assisting authorities in the investigation or prosecution of his conduct by timely notifying authorities of his intention to plead guilty (USSG § 3E1.1(b)). This gave Winchester a Total Offense Level of 29. His 3 criminal history points placed him in Criminal History Category II. His guideline range was 97 to 121 months. However, because he was subject to a statutory mandatory minimum sentence of 10 years or 120 months, the applicable guideline range was effectively 120 to 121 months. *See*

Presentence Investigation Report, ECF No. 35, PageID # 112;

Minutes of Sentencing, ECF No. 38, PageID # 146 (adopting the

Presentence Investigation Report).

Winchester was sentenced on January 1, 2019.  In

relevant part, the First Step Act of 2018, which became effective

on December 21, 2018), changed the safety valve requirements,

making it easier for certain defendants to qualify for the safety

valve and thereby avoid a mandatory minimum sentence.  *See* First

Step Act of 2018, Pub. L. 115-391 (Dec. 21, 2018).  The safety

valve provision now provides:

> **(f) Limitation on applicability of statutory
> minimums in certain cases**.--Notwithstanding
> any other provision of law, in the case of an
> offense under section 401, 404, or 406 of the
> Controlled Substances Act (21 U.S.C. 841,
> 844, 846), section 1010 or 1013 of the
> Controlled Substances Import and Export Act
> (21 U.S.C. 960, 963), or section 70503 or
> 70506 of title 46, the court shall impose a
> sentence pursuant to guidelines promulgated
> by the United States Sentencing Commission
> under section 994 of title 28 without regard
> to any statutory minimum sentence, if the
> court finds at sentencing, after the
> Government has been afforded the opportunity
> to make a recommendation, that-
>
> (1) the defendant does not have-
>
>     (A) more than 4 criminal history points,
> excluding any criminal history points
> resulting from a 1-point offense, as
> determined under the sentencing guidelines;
>
>     (B) a prior 3-point offense, as
> determined under the sentencing guidelines;
> and

(C) a prior 2-point violent offense, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Information disclosed by a defendant under this subsection may not be used to enhance the sentence of the defendant unless the information relates to a violent offense.

18 U.S.C. § 3553.

It is not clear from the record why Winchester was not expressly considered for the safety valve at the time of sentencing. Before the First Step Act amendment, the safety valve provision stated in relevant part, "(1) the defendant does

4

not have more than 1 criminal history point, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(1) (prior to Dec. 21, 2018). Winchester's 3 criminal history points possibly caused this court and counsel on both sides to conclude that he did not qualify for the safety valve, which was the case under the outdated section. He had more than 1 criminal history point, and under the prior version of 28 U.S.C. § 3553(f)(1) he was ineligible for the safety valve. Alternatively, the court and the parties may have recognized that the safety valve requirement had been amended, but may have interpreted the "and" in the amended § 3553(f)(1) as disjunctive. *See, e.g.*, ECF No. 203 (stating that the Government, the Defendant, and this court "apparently all assumed the defendant was not eligible for the 'safety valve' provision because he was not qualified under one of the three criminal history provisions").

Winchester's 3 criminal history points included crimes involving violence or threats of violence. Winchester had 1996 convictions for first degree terroristic threatening and harassment/stalking for which he received 3 criminal history points. Those crimes involved threatening to kill his ex-girlfriend with a knife, threatening to kill her boyfriend and her, choking her and throwing her across the room, and threatening to go to her workplace and kill her by putting his

5

hands around her neck and stabbing her.  *See* Presentence Investigation Report, ECF No. 35, PageID # 104.

On May 21, 2021, the Ninth Circuit, in *United States v. Lopez*, 998 F.3d 431, ruled that the "and" in § 3553(f)(1) is conjunctive rather than disjunctive.  Accordingly, under the amended version of § 3553(f)(1) effective December 21, 2018, "a defendant must meet the criteria in subsections (A) (more than four criminal-history points), (B) (a prior three-point offense), *and* (C) (a prior two-point violent offense) to be barred from safety-valve relief by § 3553(f)(1)."  *Id.* at 437.

Winchester did not have more than four criminal history points, so, according to *Lopez*, was not barred from safety-valve relief by § 3553(f)(1).  Nor was Winchester ineligible under any other part of § 3553(f).  Winchester's offense of conviction involved the sale of "ice."  He did not use violence, a threat of violence, or a firearm or other dangerous weapon while selling that "ice."  While there were allegations that Winchester had sold firearms from his residence, those allegations were unrelated to the sale of "ice" for which he was convicted.  *See* Pretrial Investigative Report ¶¶ 9-18, ECF No. 35, PageID #s 98-99 (describing offense conduct); 18 U.S.C. § 3553(f)(2).

Winchester's crime did not result in the death of or serious bodily injury to any person, as there were no identifiable victims with respect to his offense.  *See* Pretrial

Investigative Report ¶ 19, ECF No. 35, PageID # 100; 18 U.S.C. § 3553(f)(3).

Winchester was not an organizer, leader, manager, or supervisor of others during the crime.  No adjustment to his Base Offense Level was in issue for his role in the offense.  *See* Pretrial Investigative Report ¶ 28, ECF No. 35, PageID # 101; 18 U.S.C. § 3553(f)(4).

Finally, there is no dispute that Winchester provided the Government with "all information and evidence [he had] concerning the offense."  He was interviewed by investigators and "provided information about several narcotics distributors on the island of Oahu.  In addition, he admitted to conducting methamphetamine transactions at [his] address."  *See* Pretrial Investigative Report ¶ 18, ECF No. 35, PageID # 99; 18 U.S.C. § 3553(f)(5).

Winchester is currently imprisoned at Lompoc USP and has a projected release date of August 21, 2026, given anticipated good time credit.  *See* https://www.bop.gov/mobile/find_inmate/index.jsp (input inmate number 97705-022) (last visited February 8, 2023).

**III.    ANALYSIS.**

Winchester's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the
> defendant after the defendant has fully

exhausted all administrative rights to appeal
a failure of the Bureau of Prisons to bring a
motion on the defendant's behalf or the lapse
of 30 days from the receipt of such a request
by the warden of the defendant's facility,
whichever is earlier, may reduce the term of
imprisonment (and may impose a term of
probation or supervised release with or
without conditions that does not exceed the
unserved portion of the original term of
imprisonment), after considering the factors
set forth in section 3553(a) to the extent
that they are applicable, if it finds that--

(i) extraordinary and compelling reasons
warrant such a reduction . . . .

and that such a reduction is consistent with
applicable policy statements issued by the
Sentencing Commission.

In other words, for the court to exercise its authority

under § 3582(c)(1)(A), it must initially determine that the

defendant exhausted his administrative remedies or that 30 days

have passed since he filed an administrative compassionate relief

request.  If a defendant has satisfied the exhaustion

requirement, then the court may only exercise its discretion

after examining three considerations.  First, it must find that

extraordinary and compelling reasons warrant a sentence

reduction.  Second, it must find that such a reduction is

consistent with the Sentencing Commission's policy statements

(assuming there are any policy statements applicable to this

motion).  Third, it must consider and weigh the factors set forth

in 18 U.S.C. § 3553(a) to determine under the particular

circumstances presented that the requested reduction in sentence

8

is warranted.  *See United States v. Wright*, 42 F.4th 1063, 1070
(9th Cir. 2022)*; United States v. Scher*, 2020 WL 3086234, at *2
(D. Haw. June 10, 2020).  "Although a district court must
conclude that a defendant satisfies all three predicates before
granting a motion for compassionate release, it may deny
compassionate release if a defendant fails to satisfy any of
these grounds."  *Wright*, 42 F.4th at 1070-71.

> **A.    The Government Has Waived the Administrative
>         Exhaustion Requirement of 18 U.S.C.
>         § 3582(c)(1)(A).**

On or about July 12, 2021, Winchester submitted an
administrative request to his warden, asking for compassionate
release based on his medical conditions, presumably in light of
the pandemic.  *See* ECF No. 43-1, PageID # 186.  On or about July
27, 2021, that request was denied.  *See Id.*, PageID # 185.
Winchester did not file an administrative request with his warden
asking for compassionate release based on the First Step Act's
changes to the eligibility for the safety valve in light of
*Lopez*.

Some courts have opined that changing one's arguments
can render a compassionate release motion unexhausted.  *See
United States v. Kanohokula*, 2021 WL 5411211, at *3, 572 F. Supp.
895 (D. Haw. Nov. 18, 2021) ("if the basis for compassionate
release is not presented to the BOP, the BOP has no ability to
address the request on its merits, meaning that the prisoner's

claim cannot be exhausted"). This court need not here reach that issue. The Government has waived the exhaustion requirement by conceding that Winchester has exhausted his administrative remedies. *See* ECF No. 46, PageID # 203 ("The Government concedes that Winchester has exhausted his administrative remedies."); *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) (ruling that the administrative exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) is a mandatory claim-processing rule that may be deemed forfeited by the Government).

**B.  This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.**

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release.

This court has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, the court is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions.

Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated.  *See United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020).  While the Sentencing Commission has issued proposed amendments, there are at this time no applicable Sentencing Commission policy statements in effect that govern compassionate release motions filed in court by defendants under § 3582(c)(1)(A).

This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the congressional intent behind recent statutory amendments.  *Mau*, 2020 WL 6153581; *see also United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *cf. United States v. Ruffin*, 978 F.3d 1000, 1007-08 (6th Cir. 2020) (noting that some courts have held that the Application Note is not "applicable," but not deciding the issue).

The Ninth Circuit has expressly recognized that there is no applicable Sentencing Commission policy statement governing compassionate release motions filed by defendants under

§ 3582(c)(1)(A).  Nevertheless, while the Sentencing Commission's statements in USSG § 1B1.13 are not applicable policy statements that are binding on this court, they may inform this court's discretion.  *See United States v. Aruda*, 993 F.3d 797, 801-02 (9th Cir. 2021) (per curiam).

### C.   Winchester Has Demonstrated That Extraordinary and Compelling Circumstances Justify His Early Release.

#### 1.   The Substantial Difference Between the Sentence Winchester Received and What He Would Receive Now is an Extraordinary and Compelling Justification for His Early Release.

Winchester bears the burden of establishing an extraordinary and compelling reason warranting a compassionate reduction of his sentence.  *See United States v. Kanohokula*, 2021 WL 5411211, at *4 (D. Haw. Nov. 18, 2021).  He has done so, as there is no dispute that Winchester is eligible for application of the safety valve in light of *Lopez*.  His sentence would be substantially different without the application of the 120-month mandatory minimum sentence.  The inequity between that mandatory minimum sentence and what he would be sentenced to given application of the safety valve is an extraordinary and compelling reason warranting the compassionate reduction of his sentence.

Winchester was sentenced on January 7, 2019, several weeks after the First Step Act became effective.  *See* ECF No. 38.

At that time, no one expressly argued that Winchester was eligible for the safety valve given the First Step Act.  For example, the Pretrial Investigative Report, filed December 20, 2018 (the day before the First Step Act became effective) indicates that Winchester was not eligible for the safety valve. At most, Winchester argued in his sentencing statement that he should be sentenced in light of "the recently enacted sentencing legislation." *See* ECF No. 36, PageID # 126.  But he did not highlight his eligibility for the safety valve.  *Lopez* makes it clear that Winchester is eligible for the safety valve.

Winchester argues that, given his eligibility for the safety valve, his offense level should be decreased by 2 under USSG § 2D1.1(b)(18), which states, "If the defendant meets the criteria set forth in subdivisions (1)-(5) of subsection (a) of § 5C1.2 (Limitation of Applicability of Statutory Minimum Sentences in Certain Cases), decrease by 2 levels."  The problem with this is that § 5C1.2(a)(1) has not been amended to track the First Step Act's changes to § 3553(f)(1).  Now that there is a quorum of sentencing commissioners, amendments to § 5C1.2(a)(1) have been proposed to track the First Step Act's changes to § 3553(f)(1).  *See*

https://www.ussc.gov/guidelines/amendments/proposed-2023-amendments-federal-sentencing-guidelines at 14.  This court believes that, had there been a quorum, this amendment would have occurred

long ago.  Had this court applied the safety valve, this court
would have decreased Winchester's offense level by 2 levels,
giving him a total offense level of 27 and a criminal history
category of II, resulting in a guideline range of 78 to 97 months
of imprisonment.

The Government argues that the difference between
guideline ranges of 120 to 121 months and 78 to 97 months is not
an extraordinary and compelling reason warranting a sentence
reduction.  This court disagrees.  In a different case, this
court ruled that an inequitable disparity between a defendant's
actual sentence and what would likely be his sentence today may
be an extraordinary and compelling reason to reduce his sentence
to time served.  *See United States v. Ngyuen*, 2022 WL 3595090, at
*4 (D. Haw. Aug. 23, 2022).  In *Ngyuen*, the court reasoned that,
in seeking compassionate release, a defendant may argue the
inequity of his or her situation.  This court noted that nothing
in any statute or in any case law precluded this court from
considering that inequity in the compassionate release context.
*See id.*, 2022 WL 3595090, at *6.

*Ngyuen* arose in the context of a change in the law made
by the First Step Act that resulted in drastic sentencing
disparities.  In *Ngyuen*, this court summarized previous case law
in this district:

> This judge has ruled that a change in
> the law may be considered in the context of a

14

compassionate release motion.  *See United States v. Williams*, 2022 WL 1749116 (D. Haw. May 31, 2022).  Chief Judge J. Michael Seabright of this district similarly considered a change in the law in *United States v. Lii*, 528 F. Supp. 3d 1153, 1162 (D. Haw. Mar. 23, 2021).  Chief Judge J. Seabright noted that courts are split on the issue of whether drastic sentencing disparities in light of the First Step Act constitute extraordinary and compelling reasons for purposes of compassionate release motions under 18 U.S.C. § 3582(c)(1)(A). After citing cases holding that drastic sentencing disparities do not constitute extraordinary and compelling reasons, Chief Judge Seabright agreed with the only circuit court to have examined the matter and a growing number of district court cases, ruling that changes in a law may constitute an extraordinary and compelling reason to reduce a sentence under § 3582(c)(1)(A) so long as it is done on an individual basis. *Id*. at 1163.  Chief Judge Seabright subsequently reached the same decision in *United States v. Kanohokula*, 572 F. Supp. 3d 895, 903 (D. Haw, 2021).

In *United States v McCoy*, 981 F.3d 271, 285 (4th Cir. 2020), cited by Chief Judge Seabright in *Lii*, the Fourth Circuit recognized that the severity of a sentence combined with an "enormous disparity" between the sentence imposed and the sentence that would be imposed today can constitute the requisite extraordinary and compelling circumstance justifying compassionate release.  The Fourth Circuit stated that courts may, when conducting an individualized assessment of a defendant's circumstances, "consider . . . that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *Id*. at 285-86.  The Ninth Circuit appears to have cited *Lii* with approval in *United States v. Gomez*, 2022 WL 543080, at *1 (9th Cir. Feb. 23, 2022), a recent memorandum decision.

In *Kanohokula*, 572 F. Supp. 3d at 902-03, Chief Judge Seabright concluded that a defendant sentenced to 168 months of imprisonment with a guideline range of 262 to 327 months who would now be sentenced to 97 months with a guideline range of 151 to 188 months (but who had already served 121 months) sufficiently demonstrated an "enormous disparity" justifying compassionate release.

In *Lii*, Chief Judge Seabright similarly concluded that the enormous sentencing disparity between mandatory life in prison and a 15-year sentence supported a determination of extraordinary and compelling circumstances.  The defendant had already served the full mandatory minimum sentence of 15 years that he would have had to serve today, suggesting that he had already served a fair sentence and that the goals of incarceration had been achieved.  528 F. Supp. 3d at 1165.

In *United States v. Rutkowski*, Judge Jill A. Otake of this district ruled that the disparity between a life sentence imposed and a guideline range of 27 years (which also appeared unwarranted given the defendant's personal history and the characteristics and nature of his offense) was "so significant as to warrant a finding [of] extraordinary and compelling circumstances."

By contrast, in *United States v. Gomez*, 2021 WL 1240621, at *6 (D. Haw. Apr. 2, 2021), *aff'd*, 2022 WL 543080 (9th Cir. Feb. 23, 2022), the court did not find a disparity sufficient to support compassionate release when a defendant was sentenced to 240 months but says he would now be sentenced to 230 months, calling that disparity "small" and not "grossly disproportionate" to the "appropriate penalty" today.

Similarly, in *United States v. Latin*, 2022 WL 2488639 (July 6, 2022), the judge found no disparity sufficient to warrant

compassionate release.  Latin had pled guilty
in 2018 to conspiring to distribute and
possess with intent to distribute 500 grams
or more of a mixture or substance containing
a detectable amount of methamphetamine in
violation of 21 U.S.C. §§ 841(a)(1) and
(b)(1)(a).  She had a guideline range of 151
to 188 months, but the Government filed two
motions for downward departure and Latin was
ultimately sentenced to 120 months of
imprisonment.  At the time of her sentencing,
she was ineligible for the safety valve.
Subsequent to her sentencing, a change in the
manner the Ninth Circuit interpreted safety
valve conditions made Latin eligible for
safety valve relief.  *Id.*, at *1.  With
safety valve eligibility, Latin would have
had a guideline range of 121 to 151 months.
The district judge did not consider the
difference between the 121 to 151 months and
151 to 188 months to be an extraordinary and
compelling reason justifying compassionate
relief.  *Id.*, at *4.

        This case is closer to *Kanohokula*, *Lii*,
and *Rutkowski* than to *Gomez* or *Latin*.  This
case involves a 168-month sentence that would
now be, at most, 121 months, possibly lower.
Of course, this court is not saying that
whenever there is a disparity of at least 47
months that that will always justify
compassionate release.  Instead, this court
has examined the individual circumstances of
this case, which involves a lengthy period of
incarceration already served, not to mention
expressions by Ngyuen of fears concerning
personal safety.

*Id.*, 2022 WL 3595090, at *6-*7.

        Using the First Step Act cases as a guide, this court,
under the circumstances of this case, views as sufficient to
warrant compassionate release the inequity between a mandatory
minimum 120-month sentence and the applicable sentencing

guideline range.  As noted earlier, that guideline range, had the safety valve applied, would have reflected a 2-point reduction to the Base Offense Level under USSG 2D1.1(b)(18), resulting in a guideline range of 78 to 97 months.

The Government argues that a change in the law should not be applied retroactively and that such a change goes to § 3553(a) factors, not to whether there are extraordinary and compelling circumstances for purposes of 18 U.S.C. § 3582(c)(1)(A).  The Government ignores the reasoning in this district's cases cited above ruling that a drastic sentencing disparity between the sentence imposed and the sentence that would be imposed today may amount to an inequity that constitutes the requisite extraordinary and compelling circumstance justifying compassionate release.  The Government cites out-of-district cases demonstrating a split of authority on this issue.

The Government also argues that, had Winchester brought this matter as a motion under 28 U.S.C. § 2255, it would be time-barred under § 2255(f).  However, Winchester did not bring this matter under 28 U.S.C. § 2255 and instead asserted it as a matter of right under 18 U.S.C. § 3582(c)(1)(A).  Section 2255(f)'s time limitations are inapplicable to Winchester's motion under 18 U.S.C. § 3582(c)(1)(A).

In addition, the Government contends that Winchester's motion under 18 U.S.C. § 3582(c)(1)(A) is an improper attempt to

18

circumvent the appellate and habeas processes.  Again, however, Winchester has every right to bring this motion under 18 U.S.C. § 3582(c)(1)(A).  As the Ninth Circuit recognized in *Aruda*, because there is no applicable policy statement governing compassionate release motions brought by defendants under § 3582(c)(1)(A), "district courts are empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise."  *Aruda*, 993 F.3d at 801 (quotation marks, alterations, and citation omitted).  *Aruda* did not limit extraordinary and compelling reasons to those not involving a change in law.

The Ninth Circuit subsequently explained in *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022), that Congress has placed only two direct limits on what qualifies as an extraordinary and compelling reason.  First, district courts are bound by the Sentencing Commission's policy statements.  Second, rehabilitation alone is not an extraordinary and compelling reason.  *Id.*  Thus, the Ninth Circuit says, "district courts may consider non-retroactive changes in sentencing law, in combination with other factors particular to the individual defendant, when analyzing extraordinary and compelling reasons for purposes of § 3582(c)(1)(A)."  *Id.*

The Government urges this court not to grant compassionate release based on inequities flowing from changes in

19

the law because *Aruda* instructs that USSG § 1B1.13 may inform
this court's decision.  As noted above, the Sentencing Commission
has proposed a change to § 1B1.13 that would define extraordinary
and compelling reasons for compassionate release as including
"(5) CHANGES IN LAW.--The defendant is serving a sentence that is
inequitable in light of changes in the law."  Sentencing
Guidelines for United States Courts, 88 FR 7180-01 (Feb. 2, 2023)
(proposed amendment to Section 1B1.13);
https://www.ussc.gov/sites/default/files/pdf/amendment-process/re
ader-friendly-amendments/20230201_RF-proposed.pdf at 6 (last
visited February 9, 2023).

 Nor is the court persuaded by the Government's argument
that Winchester's compassionate release motion is barred by his
memorandum of plea agreement, in which Winchester "waives his
right to challenge his conviction and sentence or the manner in
which they were determined in any collateral attack, including,
but not limited to, a motion brought under Title 28, United
States Code, Section 2255, except that the defendant may make
such a challenge based on a claim of ineffective assistance of
counsel."  ECF No. 30, PageID # 59.  However, Winchester's
compassionate release motion asks for leniency in light of
matters that have arisen since he was sentenced, unlike the
typical collateral attack.  *See United States v. Morris*, 602 F.
Supp. 3d 881, 883 (E.D. Va. 2022).  The Government's citation of

*United States v. Tapaha*, 2021 WL 4820511, at *1 (D. Ariz. Oct. 15, 2021), is unavailing, as the waiver in that case was enforced with respect to claims challenging the constitutionality of matters existing at or before sentencing (e.g., challenging the mens rea for the crime and the required registration with the sex offender registry).  By contrast, this court has before it the clarification in *Lopez* of the requirements for the safety valve, and Winchester is seeking leniency based on equitable considerations in light of *Lopez*.  Winchester's compassionate release motion is not barred by his plea agreement.

Finally, the court rejects the Government's argument that Winchester has no compelling reason for early release. According to the Government, this court should not grant the motion right now because, even with a reduced sentence, "he would still have about 24 months to serve in prison."  But Winchester's current projected release date with respect to his 120-month sentence is August 21, 2026, given good time credit.  *See* https://www.bop.gov/mobile/find_inmate/index.jsp (input inmate number 97705-022) (last visited February 8, 2023).  With a reduced sentence, his release date would potentially be in 2024, given good time credit.  The court thinks the BOP and Winchester need time to plan for his release back into society.

      **2.**    **The COVID-19 Pandemic is an Additional Reason Supporting Compassionate Release Given Winchester's Increased Risk of Contracting a Severe Case.**

Besides the safety valve issue, the ongoing pandemic is an important consideration for this court.  It was expressly raised only in Winchester's administrative exhaustion request, but this court can hardly ignore it.  At the time the Presentence Investigation Report was prepared, Winchester was 6 feet tall and 234 pounds.  *See* ECF No. 25, PageID # 108.  This gave him a BMI of 31.7, placing him in the obese category.  *See* https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html.  The CDC says that obesity "can make you more likely to get very sick from COVID-19.  The risk of severe illness from COVID-19 increases sharply with higher BMI." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#:~:text=Like%20adults%2C%20children%20with%20obesity,very%20sick%20from%20COVID%2D19 (last visted February 10, 2023).  COVID-19 is present at his facility.  *See* https://www.bop.gov/coronavirus/ (last visted February 10, 2023) (stating that Lompoc USP currently has 2 employees who have COVID-19).  Although on its own this would not cause this court to grant this motion, the court recognizes that medical issues are often at the heart of any determination as to whether extraordinary and compelling reasons warrant a sentence

reduction.  Here, this court combines that circumstance with the analysis set forth in other sections of this order.

### D. Section 3553(a) Factors Support Compassionate Release.

In evaluating whether early release is justified, this court also must consider the factors set forth in § 3553(a).  The Government did not brief the § 3553(a) factors relevant to Winchester, instead saying, "there is no need to consider the § 3553(a) factors at this time."  ECF No. 46, PageID # 218. While lacking the benefit of the Government's arguments with respect to the § 3553(a) factors, this court determines that those factors favor a reduction in Winchester's sentence.

When balancing the § 3553(a) factors, the Ninth Circuit requires this court to

> use the *fullest information possible* concerning subsequent developments in the law, such as changes in sentencing guidelines, legislative changes to a mandatory minimum, and changes to a triggering predicate offense to ensure the punishment will fit the crime and critically, to ensure that the sentence imposed is also sufficient, but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; and to protect the public.

*United States v. Lizarraras-Chacon*, 14 F.4th 961, 967 (9th Cir. 2021) (quotation marks, alterations, and citation omitted). Congress's amendment of the safety-valve provision is relevant to what this court considers to be a fair and just sentence.

Winchester was certainly involved with a serious drug offense, but even a reduced sentence is a deterrent to such conduct.  Winchester appears to have been in custody since February 2019 (about 4 years) and may be released in 2024.  *See* ECF No. 38.  Even with such a reduction of Winchester's sentence, the goals of incarceration would be achieved and would reflect an appropriate sentence as determined by Congress.

Winchester does have a significant criminal history, which his placement in Criminal History Category II has already taken into account.  Similarly, the amount of methamphetamine Winchester was responsible for has been taken into account in determining his offense level.  The court notes that, before his present conviction, the crimes identified in Winchester's Pretrial Investigation Report occurred between 1986 and 2000 and are thus dated.  Some of his crimes involved violence and threats of violence, making this court concerned about a potential threat to public safety.  That threat, however, can be monitored during the 5 years of supervised release that Winchester will be subject to once released.  *See* Judgement, ECF No. 39.

There is no evidence in the record indicating that Winchester has had disciplinary issues while incarcerated.  At most, the record reflects that he had no disciplinary history from February through August 2021.  *See* ECF No. 43-2, PageID # 188.

24

Winchester has made numerous attempts to rehabilitate himself while imprisoned. *See* ECF No. 43-2, PageID #s 188-89 (listing numerous educational courses taken). Furthermore, the Bureau of Prisons trusts him enough to allow him to work. *See* ECF No. 43-3, PageID #s 191.

Winchester also has outlined a release plan. He says that, if released, he will live with his fiancée in Honolulu, Hawaii, where he will seek employment with his previous employer, Moku Kitchen, which he says has indicated it will employ him.

## III.   CONCLUSION.

Winchester's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is granted in part. Although he sought a reduction in his sentence to 78 months of imprisonment, the court reduces his sentence to 82 months of imprisonment to reflect the seriousness of his prior convictions involving violence and threats of violence while also recognizing that those convictions were from the mid-1990s.

Special Condition Number 1 of the Judgment, ECF No. 39, PageID # 152, is modified to delete the word "a" and add the words "an outpatient" in its first sentence in light of recent

appellate decisions.  Special Condition Number 1, which

Winchester must comply with upon his release, is as follows:

> 1.  You must participate in an outpatient substance abuse treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program (such as provider, location, modality, duration, and intensity).

It is so ordered.

DATED: Honolulu, Hawaii, February 16, 2023.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Winchester*, Cr. No. 17-00743 SOM; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE